UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:25-cr-00062-SDN |
| | ) | |
| THADIUS C. WIND, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON COMPETENCY**

Defendant Thadius C. Wind was charged with making interstate threats in violation of 18 U.S.C. § 875(c). Mr. Wind's attorney moved for a psychiatric evaluation under 18 U.S.C. § 4241, and I granted the motion. After a psychologist interviewed Mr. Wind and submitted her report to the Court, I held a hearing on Mr. Wind's competency to stand trial. For the reasons that follow, I conclude Mr. Wind suffers from a mental disease or defect that presently impairs his ability to assist in his defense. Accordingly, I find him incompetent to stand trial and order that he be committed to the custody of the Attorney General for restoration pursuant to 18 U.S.C. § 4241(d).

BACKGROUND

I.    The Alleged Offense

On January 24, 2025, the United States charged Mr. Wind by complaint with making interstate threats in violation of 18 U.S.C. § 875(c). ECF No. 3. The supporting affidavit alleged that Mr. Wind, using various Facebook and X accounts, had posted numerous threatening statements. For example:

- "Improvised explosive devices. Sniper rifles, and small arms. Molotov cocktails??? Any all means necessary. Yeah. Kill them. Or be killed with them. Come."

1

- "SHOOT ALL THE OBAMA KLAN IN THEIR FACES"

- "NUKE THE JEWS, LITERALLY"

- "FUCK YOU YA FILTHY RATS. HELL. NEXT COMETH WRATH. I WILL KILL YOU ALL."

- "Kamala Harris and Donald Trump. You are granted the opportunity and the privilege to come forth and request that I remove your head in order to save your soul."

- "GOLDEN TICKET KILLS. OBAMA IS 1 of them. Golden ticket = free pass to heaven."

- "JEWS. NOW THAT THE WORLD IS COME TO UNDERSTAND THAT, I AM GOD, YOU FILTHY FUCKING CUTS ARE DOOMED."

In addition to the posts, the supporting affidavit alleged that Mr. Wind "was reported to have brandished a sword" during a standoff with police in 2021. Indeed, the supporting affidavit alleged that, according to police records, the Penobscot County Sheriff's Office responded to complaints at Mr. Wind's residence at least fourteen times. As one officer allegedly wrote, "It is clear that Thadius'[s] erratic behavior is escalating. Thadius is highly aggressive towards law enforcement and is known to carry edged weapons including knives and swords." The affidavit also alleged that Mr. Wind has a history of mental illness.

## II.    The Procedure Here

Mr. Wind was arrested on March 25, 2025. That day, counsel was appointed. After Mr. Wind's initial appearance, where the court ordered him temporarily detained, new counsel (Attorney Connor Herrold) was appointed. Six days later, on March 31, 2025, Attorney Herrold moved under 18 U.S.C. § 4241 for a psychiatric examination of Mr.

Wind based on his concern that Mr. Wind may not be competent to stand trial. The Court granted the motion. Between April 25, 2025, and May 22, 2025, Dr. Heather H. Ross, Ph.D., a forensic psychologist, interviewed Mr. Wind at the Federal Correctional Institution in Butner, North Carolina. The Court received Dr. Ross's report on May 28, 2025, and held a competency hearing on July 22, 2025.

### III.    The Evidence

At the hearing, I admitted Dr. Ross's sealed report into evidence, Dr. Ross testified in accordance with her Report, and Mr. Wind himself testified. I have considered all of this information in making my conclusion here.

According to the testimony at the hearing, Mr. Wind believes that he is the "son of God," "Jesus Christ," "alpha omega," "the prince of life," and "the first creation of God above." According to Mr. Wind, he does not just believe this—he "knows" it. Mr. Wind believes that because he is actually Jesus Christ, people should "submit" to him or "bow down" so that they may be saved. In phone calls from jail with his partner, Mr. Wind suggested she should spread the word about the fact that Jesus Christ is being criminally prosecuted in this matter.

Mr. Wind has written what he calls "cyphers" and "codices." These documents involve various letters of the English alphabet, Greek symbols, geometric drawings, and mathematical equations. In his view, the cyphers and codices prove the fact that he is Jesus Christ. At the hearing, Mr. Wind offered to take the time to explain further but warned that "knowledge of truth" is not a "bumper sticker conversation." Asked to briefly elaborate, Mr. Wind spoke for several minutes in a calm, clear, and deliberate manner about his perceived connections between geometry, number systems, and alphabets—all evidence, in his view, of the fact that he is Jesus. Dr. Ross testified that during her

evaluation, Mr. Wind gave similar explanations, "adding certain numbers and certain letters" to prove his identity as Jesus.

According to Dr. Ross, Mr. Wind provided her with copies of his cyphers and codices, not only to help her in the evaluation process but also so that she would realize he was Jesus Christ and be "saved." During her evaluation, if Dr. Ross asked a question Mr. Wind did not like, he became defensive and irritable, frequently interrupting her. He occasionally seemed to try to "bait" Dr. Ross, insulting both government employees and psychologists, knowing that Dr. Ross was both. Often, Mr. Wind answered Dr. Ross's questions tangentially: he would begin by seemingly answering the question only to veer into another unrelated topic. Still, he presented as generally engaging and friendly to Dr. Ross so long as she avoided any sensitive topics for Mr. Wind.

After evaluating Mr. Wind, Dr. Ross diagnosed him with delusional disorder, grandiose type. A delusional disorder is when a person has a strong false belief that they cannot give up despite evidence to the contrary. The grandiose type is characterized by a false belief the person has some very high status—for instance, believing that one is close to the President and can influence lawmaking. Unlike some psychiatric disorders, delusional disorder does not necessarily present with hallucinatory symptoms. Nor does it prevent someone from organizing their thoughts or generally impair their functioning. As Dr. Ross explained, "An individual with delusional disorder may look like the average individual on the street unless you discuss with them that particular area of delusions."

That is consistent with my observation of Mr. Wind at the competency hearing. Throughout the competency hearing, Mr. Wind was calm, respectful, and well-spoken. Aside from the occasional interjection, he followed court procedure and spoke at appropriate times regarding the relevant subjects. He had good humor; he said

4

"gesundheit" quietly when someone in the courtroom sneezed. When asked on cross examination who he thought would judge him in this criminal case, Mr. Wind replied, "Ultimately, we will go to trial and a jury will judge me. And, based on that, whatever the Court determines, according to that jury, that essentially constitutes a microcosm of mankind judging me, or at least of this community."

Dr. Ross testified consistent with her report that Mr. Wind suffers from a mental disease or defect: delusional disorder, grandiose type. Dr. Ross further testified, consistent with her report, that the symptoms of Mr. Wind's mental disease or defect render him incompetent to stand trial because, in Dr. Ross's view, although Mr. Wind is able to understand the *factual* nature and consequences of the proceedings against him, Mr. Wind is not able to assist properly in his own defense. Indeed, according to Dr. Ross, Mr. Wind claimed to understand the roles of judge, prosecutor, and defense attorney "better than they understand them themselves." However, in Dr. Ross's view, Mr. Wind does not have a *rational* understanding of the nature and consequences of the proceedings, to the extent that he will be unable to reasonably assist his defense.

First, Mr. Wind—believing that he is Jesus Christ—thinks that his case in this Court will be like the trial of Jesus Christ described in the Bible. Mr. Wind also suggested to Dr. Ross that jurors should only be seated if they believe "the truth," that is, that he is Jesus Christ. Second, Mr. Wind told Dr. Ross that he has difficulty working with his attorney. Dr. Ross testified that Mr. Wind wants to be "first chair" during his trial. Mr. Wind believes that his attorney cannot help him because his trial will turn out the same way as the trial of Jesus Christ in the Bible. However, Mr. Wind also told Dr. Ross that he does not want to represent himself because he believes he needs "staff," such as his attorney,

to assist him. Third, Dr. Ross opined that Mr. Wind lacks a rational understanding of the proceeding, which undermines his ability to assist in his defense.

## DISCUSSION

"The conviction of a person legally incompetent to stand trial violates due process." *United States v. Maryea*, 704 F.3d 55, 69 (1st Cir. 2013). To determine whether a defendant is legally competent, I must first determine whether they are "presently suffering from a mental disease or defect." 18 U.S.C. § 4241(d). If they are, competence turns on whether the defendant still "has sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding—and whether [they have] a rational as well as factual understanding of the proceedings against [them]." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *accord Johnson v. Norton*, 249 F.3d 20, 26 (1st Cir. 2001); 18 U.S.C. § 4241(d).

This second step is a "functional inquiry," in that a defendant "may have serious mental illness while still being able to understand the proceedings and rationally assist [their] counsel." *United States v. Widi*, 684 F.3d 216, 220–21 (1st Cir. 2012). To that end, the inquiry is "intensely fact-based." *Pike v. Guarino*, 492 F.3d 61, 75 (1st Cir. 2007). I may consider a plethora of factors, all in an effort to determine what part the defendant reasonably can play in their own trial. *Robidoux v. O'Brien*, 643 F.3d 334, 339 (1st Cir. 2011); *United States v. Thomas*, 519 F. Supp. 2d 135, 140–41 (D. Me. 2007) (considering "whether the defendant understood the nature of the charges and the differences, if any, among the charges; whether the defendant understood the roles of the judge, jury, and lawyers; and the defendant's apparent ability to consult with his attorney"). I must give some weight to the opinions of the defendant, their counsel, and any examining clinicians.

*Widi*, 684 F.3d at 220. Finally, I may also take into account my own observations of the defendant in the courtroom. *Id.*

I find that Mr. Wind presently suffers from a mental disease or defect. After meeting with Mr. Wind for multiple evaluations and reviewing his medical history, Dr. Ross diagnosed him with delusional disorder, grandiose type. Nothing in the record casts doubt on that diagnosis. Rather, my observation of Mr. Wind in court is entirely consistent with Dr. Ross's conclusion.

As to the functional inquiry, I find Mr. Wind does not have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky*, 362 U.S. at 402. First, I give great weight to Dr. Ross's credible testimony and expert report. *See United States v. Muriel-Cruz*, 412 F.3d 9, 13 (1st Cir. 2005) (emphasizing district court's reliance on clinician's opinion); *United States v. General*, 278 F.3d 389, 398 (4th Cir. 2002) (explaining that a medical report "is entitled to significant weight because it is the most recent and comprehensive evaluation of [the defendant's] competency"). She concluded, based on her expert judgment, that Mr. Wind's lack of *rational* understanding will hinder his ability to consult with his lawyer and assist with his own defense.[1]

Second, I note that Mr. Wind's delusions are closely related to the allegations against him. Many of the threats for which Mr. Wind is charged implicate his belief—what he calls "knowledge"—that he is the son of God. Those delusions therefore are likely to undermine his ability to rationally understand the nature of the charges, to cooperate with

---

[1] I note that Attorney Herrold—though he zealously represented Mr. Wind's position that he was competent at the hearing—initially raised concerns about Mr. Wind's competence through Attorney Herrold's initial motion for a competency evaluation, as well as in interviews with Dr. Ross. *See Widi*, 684 F.3d at 220 ("[D]efense counsel's conclusion of competence is generally given great weight . . . .").

his lawyer, and to assist in his own defense. *See United States v. Rodman*, 446 F. Supp. 2d 487, 494 (D.S.C. 2006).

For his part, Mr. Wind maintains that he is competent, and I give that fact some weight. *See Widi*, 684 F.3d at 220. This is consistent with what Dr. Ross stated was one of the characteristics of a delusional disorder: that such a delusion can result in only relatively minor impairment outside the particular topic of delusion. Moreover, because a delusional disorder involves a strong false belief, "denial of mental health issues" may well be "one of the symptoms" of Mr. Wind's disease. *See United States v. Zendran*, No. 19-mj-118, 2020 WL 7768034, at \*10 (D.R.I. Dec. 30, 2020), *R&R adopted*, 2021 WL 2411209 (June 14, 2021). Mr. Wind also points to previous findings that he was competent to stand trial in other matters. That argument is unavailing: "The critical question is the 'present ability' of a defendant—not the ability at some time in the past or future." *Id.* at \*8. Those previous findings of competence therefore carry little weight as to Mr. Wind's present ability. And Mr. Wind's delusions have, by all accounts except his, become progressively worse in recent years.

Mr. Wind testified that he could, under some circumstances, work with an attorney. According to Mr. Wind, should a dispute arise in the attorney-client relationship, Mr. Wind would seek to resolve it with "civil discourse." As he explained, "If I want to present the truth instead of a manipulative legal procedural strategy, it's for them to conform to my wishes, not for me to conform to theirs. So assuming that they were willing to follow my directives which are all within the guidelines of the law and sound and reasonable doctrine, then I can work with anyone." Not only does this testimony belie the nature of the attorney-client relationship, it supports Dr. Ross's testimony that Mr. Wind believes others should "submit" or "bow down" to him, that his

8

attorney should act as "staff" to do what Mr. Wind says, and that his attorney cannot help him because his trial will follow the course of the trial of Jesus Christ. Together, this supports my conclusion that Mr. Wind cannot assist properly in his own defense.

To be sure, I agree with Dr. Ross that Mr. Wind has a solid *factual* understanding of the proceedings. Based on my observation of Mr. Wind in the courtroom, he appears to be an intelligent man, able to describe with reasonable clarity various aspects of the legal system and the role each person will play in his case. However, "[m]indful that I lack the professional expertise to substitute my own diagnosis based on my observations [of Mr. Wind] over a few hours for that of [Dr. Ross] developed over weeks of observation . . . I decline to afform substantial weight to my impressions." *Zendran*, 2020 WL 7768034, at *10 (noting the court's observation that the defendant was "actively and energetically engaged" but declining to give that significant weight where the psychologist made similar observations and concluded the defendant was not competent).

Moreover, a mere factual understanding of the proceedings is not enough; Mr. Wind must be able to rationally understand the proceedings and consult with his lawyer accordingly. As Dr. Ross explained, Mr. Wind's choices as to his defense strategy are likely to be based on his delusions, rather than on facts he accurately understands. Therefore, "as result of his delusions" it seems likely Mr. Wind "is incapable of focusing on a proper defense." *United States v. Snyder*, No. 04-cr-00017, 2006 WL 1401034, at *5 (W.D. Va. May 18, 2006). To stand trial, he must be able to play a real part in his defense. I find he cannot do so.

## CONCLUSION

For the foregoing reasons, I find by a preponderance of the evidence that Mr. Wind presently suffers from a mental disease or defect that renders him unable to assist

9

properly in his own defense. *See* 18 U.S.C. § 4241(d). Accordingly, I find Mr. Wind is not competent to stand trial in this matter at this time.

Pursuant to 18 U.S.C. § 4241(d), I **ORDER** Mr. Wind committed to the custody of the Attorney General of the United States. The Attorney General shall hospitalize Mr. Wind for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until—

a. his mental condition is so improved that trial may proceed if the Court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

b. the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of that time period, the Court determines that Mr. Wind's mental condition has not so improved as to permit trial to proceed, I will evaluate Mr. Wind's continued hospitalization or discharge in accordance with the standards set forth in 18 U.S.C. § 4246.

If the director of the facility in which the defendant is hospitalized, pursuant to 18 U.S.C. § 4241(d), determines that Mr. Wind has recovered to such an extent that he is able to assist properly in his defense, the director shall promptly file a certificate to that effect with the Clerk of the Court for the United States District Court for the District of Maine at 202 Harlow Street, Bangor, Maine 04401. The Clerk shall then send a copy of the certificate to the attorney for Mr. Wind and to the attorney for the Government, and the matter shall be set for hearing pursuant to 18 U.S.C. §§ 4241(e), 4247(d). The director of

the facility in which Mr. Wind is hospitalized shall provide the Court with regular updates as to his progress every thirty days during his hospitalization.

A copy of this Order shall be given to the United States Marshal and the Marshal shall make arrangements as are necessary for the hospitalization of Mr. Wind as required by this Order. If Mr. Wind is hospitalized outside the District of Maine, upon his return to the District of Maine from the facility the Marshal shall immediately notify this Court of that fact. The period of delay resulting from this proceeding to determine the mental competency of the defendant, including any examinations, shall be excluded in computing the time within which the trial of any such offense must commence, pursuant to 18 U.S.C. § 3161(h)(1)(A).

**SO ORDERED.**

Dated this 25th day of July, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**